## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RONNIE MAC CHANCE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **No. CIV 20-373-RAW-SPS** |
| | ) | |
| **JARROD ROBERTS, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION AND ORDER</u>

This action is before the Court on Defendants' motion to dismiss or for summary judgment. The Court has before it for consideration Plaintiff's amended complaint (Dkt. 18), Defendants' motion (Dkt. 44), Plaintiff's response (Dkt. 54), and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 43).

Plaintiff is a pro se prisoner in the custody of DOC who is incarcerated at Jess Dunn Correctional Center (JDCC) in Taft, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations occurring during his incarceration at JDCC. The defendants are Jarrod Roberts, JDCC Health Administrator; Starla Phillips, JDCC Food Service Supervisor; Sharon L. McCoy, JDCC Warden; and Cheri Atkinson, DOC Medical Services Manager.

**Standard of Review for Dismissal**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid

dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

2

**Standard of Review for Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*  In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).  Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## I.  Medical Diet[1]

Plaintiff alleges that from February 4, 2019, to August 28, 2019,[2] he was denied a proper medical diet, causing him unnecessary pain and suffering, in violation of the Eighth

---

[1] The Court's citations to the record refer to the Court's CM/ECF page numbering.

[2] Plaintiff claims he exhausted his administrative remedies for this claim on August 28, 2019. (Dkt. 18 at 5).  The DOC Administrative Review Authority agrees that this claim was exhausted on that date. (Dkt. 43-19).

Amendment.  (Dkt. 18 at 5).  Defendants allege Plaintiff received a medical diet to accommodate his medical needs as soon as one became available.  (Dkt. 44-8).

The record shows that on or about January 11, 2019, Plaintiff was diagnosed at the University of Oklahoma Medical Center with gastroesophageal reflux disease (GERD), and a GERD diet was recommended.  (Dkt. 43-32 at 2-6).  On January 16, 2019, Plaintiff requested an appointment with Dr. Eddy to discuss his diet.  (Dkt. 43-5 at 2).  On February 4, 2019, Plaintiff submitted a Request to Staff (RTS #1438250) to Defendant Phillips, stating he had been prescribed a Mediterranean diet and asking to receive that diet.[3]  (Dkt. 43-8 at 3).  The response advised Plaintiff that a healthy heart or vegetarian diet was available.  *Id.*

On February 15, 2019, Plaintiff submitted RTS #143896 to Chaplain Remer, asking to be placed on the kosher diet.[4]  In response, Plaintiff was advised to meet with Remer within 30 days to discuss the request.  (Dkt. 43-8 at 4).

On May 7, 2019, Plaintiff submitted RTS #144444 to Defendant Phillips, stating he had been prescribed a Mediterranean diet.  Because DOC did not offer such a diet, he had

---

[3] A Request to Staff (RTS) is the first document needed in the DOC's procedure to exhaust administrative remedies.  The entire process is discussed in the section of this Opinion and Order regarding exhaustion of administrative remedies.

[4] On January 29, 2019, Plaintiff had submitted RTS #143786 to the prison chaplain, requesting to change his religious status to Masienic [sic] Jew.  In response, Plaintiff was advised that his religious status had been changed in the Offender Management System, and a request had been forwarded to the Records Office to change Plaintiff's Consolidated Record Card.  (Dkt. 43-8 at 2).

requested a kosher diet for medical reasons, which was approved on April 19, 2019.  (Dkt. 43-8 at 5).

On May 24, 2019, Plaintiff submitted RTS #144587 to Defendant Roberts, stating he had been prescribed a Mediterranean diet at OU Medical Hospital.  Plaintiff stated he had spoken with Dr. Eddy who advised that DOC did not offer such a diet.  Dr. Eddy, therefore, recommended a kosher diet as an alternative.  Plaintiff's RTS requested the Mediterranean diet "or something equivalent" for his dietary needs.  In the response dated June 4, 2019, Plaintiff was advised that his medical records did not indicate an order for such a diet and that he should discuss the diet at his next medical appointment on June 11, 2019.  (Dkt. 43-8 at 6).[5]

On June 24, 2015, Plaintiff submitted Grievance #19-28, claiming he had requested a kosher diet that had not been provided and requesting the prescribed diet.  (Dkt. 43-17 at 10).  On June 25, 2019, Plaintiff submitted another grievance asking for his kosher diet.  *Id*. at 11.  The grievance response advised Plaintiff that pursuant to DOC policy, a kosher diet could take up to 60 days to receive, and Food Services had confirmed that he began receiving the kosher diet on July 16, 2019.  *Id*. at 9.[6]  Plaintiff asserts he appealed the

---

[5] "All medical diets require a medical provider's order documented in the electronic health records."  (Dkt. 43-34 at 4).  There is, however, no indication in the record that Plaintiff was prescribed a "Mediterranean diet."  DOC's food service policy includes instructions for inmates wanting to convert the mainline diet to a diet for GERD.  (Dkt. 43-33 at 6).

[6] Defendants claim Plaintiff also was provided with snacks because the mainline and kosher diet contained inadequate calories.  (Dkt. 43-30 at 2-7; Dkt. 44 at 25).  Plaintiff, however, asserts the snacks were ordered years before his GERD diagnosis because of the amount of medication he takes.

5

disposition of Grievance #19-28 to the ARA, complaining that he did not receive his kosher diet until July 23, 2019, however, the reviewing authority's response was affirmed.  (Dkts. 18-3 at 19-21).

On June 19, 2020, Plaintiff submitted RTS #147031-10 to Chaplain Remer, asking him to verify that Plaintiff was "still kosher."  The response stated that Plaintiff was "still on the list."  (Dkt. 43-8 at 7).  On June 29, 2020, Plaintiff submitted an RTS (number illegible) to Food Service, complaining that although he had confirmed with the Chaplain that he still was considered kosher, the computer did not recognize this status.  Plaintiff asked that the computer reflect his kosher status.  (Dkt. 43-8 at 8).

In medical conditions cases, prison officials do not violate an inmate's Eighth Amendment rights unless they are deliberately indifferent to the inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  *See also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (deliberate indifference requires that the prison officials knew of and disregarded "an excessive risk to inmate health and safety"); *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir.1991) (The deliberate indifference standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind") (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

_____

(Dkt. 54 at 22).

6

person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980) (further quotation omitted)). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

*Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

"Only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment." *Wilson*, 501 U.S. at 297 (quoting *Estelle*, 329 U.S. at 104) (emphasis in original). Further, "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

Upon review, the Court finds Plaintiff's medical need is sufficiently serious and meets the objective component of the deliberate indifference standard. He, however, has failed to show that any of the defendants acted with the state of mind required to meet the subjective component of the standard. While there was a delay in Plaintiff's receiving his medical diet, there is no evidence of interference with the medical diet or that the delay was intentional. Because there are no genuine issues of material fact concerning whether Defendants were deliberately indifferent to Plaintiff's medical needs related to his special diet, summary judgment on this claim is GRANTED.

## II. Equal Protection and Policy Violation

Plaintiff claims his equal protection rights were violated when Defendants charged

7

him for prescription medication in violation of applicable policies, rendering him destitute and forcing him to forage for food and other necessities.  He has asked the records department, the trust fund, and the law library why this is happening, and he has requested that the excessive charges stop.  Plaintiff contends that because of the deductions from his trust account, he lacks funds to purchase basic necessities for himself, and he is charged for "nonexistent medical care."  (Dkt. 18 at 32-34).  The Court notes that he has not cited any authority to support his claim that the deduction of prescription copays was itself a constitutional violation.

Plaintiff does not claim he is a member of a protected class.  Therefore, the only other claim available to him is a "class-of-one" equal protection claim.  To state a claim for a class- of-one equal protection violation, Plaintiff must allege he was "intentionally treated differently from others similarly situated, and there is no rational basis for the difference in treatment."  *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016) (citation omitted).  In class-of-one cases, "it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable."  *Jicarilla Apache Nation v. Rio Arriba Cty.*, 440 F.3d 1202, 1213 (10th Cir. 2006).  Thus, to succeed on such a claim, Plaintiff must show that (1) no rational person could view the differing circumstances of the plaintiff from others as justifiable on the basis of a legitimate governmental policy, and (2) the similarity in circumstances and difference in treatment

exclude the possibility that the defendants made a mistake.  *Id.*

Here, Plaintiff is complaining about the failure of various prison officials to provide him with free prescriptions for certain medical conditions, in accordance with DOC policy. DOC's failure to follow its own policy, however, does not rise to the level of a constitutional violation.  Further, DOC operations memoranda are not designed to, and do not confer any additional rights upon any prisoner that is greater than those authorized by statute or protected by the Constitution.  Instead, DOC procedures are implemented to "aspire to instruct subordinate employees how to exercise discretion vested by the State in the [Director], and to confine the authority of [department] personnel in order to avoid widely different treatment of similar incidents." *Sandin v. Conner*, 515 U.S. 472, 482 (1995).  To find that agency procedures confer a right "creates [the very] disincentives" warned of in *Sandin.  Id.*  DOC created procedures to give guidance to staff in the day-to-day operations of the agency in situations that involve discretion.  Those same procedures cannot be used to create a right beyond what is authorized by the United States Constitution.  Plaintiff's claim is tantamount to "prisoners comb[ing] regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* at 481.

Further, the failure to provide Plaintiff with free prescriptions apparently resulted from an administrative error, and the record shows he was credited for the prescriptions that mistakenly were charged to him.  (Dkt. 43-23 at 12-20).  Thus, the Court finds there are no genuine issues of material fact concerning whether Defendants violated his equal protection

rights when DOC policy was not followed.  Summary judgment is GRANTED on this claim.

### III. Personal Participation

Plaintiff alleges that from June 20, 2019, to December 19, 2019, he filed grievances for four issues to Defendant Sharon McCoy.  He claims McCoy's failure to resolve the situations violated the Eighth Amendment, because the failure caused Plaintiff's unnecessary pain and suffering by persons under McCoy's supervision.  Plaintiff further asserts that on December 19, 2019, Defendant Cheri Atkinson threatened him with punishment for filing grievances, in violation of his First Amendment rights, when she warned him in a response to a grievance that a grievance restriction could be imposed for misuse or abuse of the grievance policy.  (Dkt. 18 at 6; Dkt. 18-7 at 15).

At all times relevant, McCoy served as warden of Plaintiff's facility, and Atkinson served as the Medical Administrative Review Authority and Medical Services Manager. (Dkt. 18 at 4).  McCoy and Atkinson allege they did not personally participate in any constitutional violation.

"Personal participation is an essential allegation in a § 1983 claim."  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (citations omitted).  *See also Mee v. Ortega*, 967 F.2d 423, 430-31 (10th Cir. 1992).  Plaintiff must show that a defendant personally participated in the alleged civil rights violation.  *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  Supervisory status is not sufficient to support liability under § 1983.  *Id*.  *See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981).  *See also Serna v.*

*Colo. Dep't of Corr.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights."). Further, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by the plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations omitted).

Plaintiff asserts he sent numerous documents to Defendants McCoy and Atkinson, and they knowingly and willfully signed the relevant documents, indicating their personal participation in the alleged events. (Dkt. 54 at 29-30). Plaintiff further argues that Defendants McCoy and Atkinson had the authority and ability to resolve his issues. *Id.* at 29. Plaintiff, however, fails to cite any authority for his interpretation of personal participation, and the Court finds Plaintiff has failed to demonstrate a constitutional violation by Defendants McCoy and Atkinson.

Because Plaintiff has failed to demonstrate personal participation by these two defendants, Defendants McCoy and Atkinson are DISMISSED from this action for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## IV. Exhaustion of Administrative Remedies

Plaintiff alleges that between January 3, 2019, and December 19, 2019, Defendant Roberts denied him proper medical care and copies of medical records, and Roberts charged him for medical treatment, all in violation of his Eighth Amendment rights.

Defendants allege Plaintiff has failed to exhaust the administrative remedies for his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). He must properly complete all required steps of the grievance process to exhaust his administrative remedies. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. Dec. 28, 2007); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

DOC Policy OP-090124, "Inmate/Offender Grievance Process," governs DOC offender complaints regarding incidences of prison life (Dkt. 44-1).[7] It also provides the

---

[7] This action was filed prior to enactment of the current version of OP-090124. The April 11, 2019, version of the policy that was in place when this lawsuit was commenced is attached to the Defendants' motion to dismiss (Dkt. 44-1). The October 18, 2017, version of OP-090124 also is attached to Defendants' motion to dismiss (Dkt. 44-2), because some of Plaintiff's grievances would have been filed pursuant to that version of the policy. For the sake of clarity, only the earlier version of the policy is cited in this Opinion and Order, because relevant portions of each version of the policy are indistinguishable for purposes of the Defendants' motion to dismiss or for summary judgment. *See* Dkt. 44 at 20 n.4.

multi-step exhaustion process an offender must satisfy before filing suit. *Id.* Pursuant to Part V of the policy, an offender first must attempt to informally resolve his complaint by talking with the appropriate staff member. If unsuccessful, the offender must submit a Request to Staff (RTS) to the appropriate staff member. *Id.* at Part V(B). If the offender's complaint remains unresolved, the offender may begin the formal grievance procedure by submitting a grievance to the Reviewing Authority. *Id.* at Part VI. If the complaint concerns a medical issue, the offender must submit the grievance to the facility Correctional Health Services Administrator (CHSA). *Id.* at part VI(B)(1). Grievances that are of an emergency or sensitive nature can be submitted directly to the Reviewing Authority without informal resolution. *Id.* at Part IX. This is appropriate where the inmate faces a substantial risk of personal injury, sexual harm or other irreparable harm. *Id*. If a grievance response fails to resolve the issue, the inmate can appeal to the Administrative Review Authority (ARA) or, if the complaint concerns a medical issue, to the DOC Medical ARA. *Id.* at Part VIII.

When an RTS or grievance is not answered, DOC's policy provides a remedy. Specifically, if there has been no response to a RTS within 30 days of submission but no later than 60 days, an inmate may file a grievance regarding the lack of response. *Id.* at Part V(B)(1)(b)(8). Likewise, when a grievance is submitted and there has been no response within 30 days but less than 60 days, an inmate may file a grievance to the ARA on the issue of a lack of response. *Id.* at Part VI(C)(4). All of these steps must be taken to exhaust the administrative remedies for an issue. *Id.* at Part VIII(D). The record shows that Plaintiff

submitted the following RTSs, grievances, and appeals:

### A. Medical Copays

On December 4, 2018, Plaintiff submitted RTS #143488 to Defendant Roberts, complaining that he had been charged for prescriptions for chronic care conditions and asking for a refund. (Dkt. 43-21 at 5). The response advised Plaintiff that the medications at issue were not for chronic care. Plaintiff also was informed of the relevant deadline to submit an RTS. (Dkt. 43-21 at 5).

On January 15, 2019, Plaintiff submitted RTS #146188-8 to Warden McCoy, asking who he should talk to about his trust fund account being "drained" for more than four years. (Dkt. 43-9 at 2). There was no response to this RTS.

On January 28, 2019, Plaintiff submitted a letter to Clint Castleberry regarding RTS #143488, asking for a refund for his prescriptions and for two doctor visits. (Dkt. 43-21 at 3-4). The request was returned unanswered, because the complaint should have been brought through either the grievance process or medical sick call process. *Id.* at 2.

On May 7, 2019, Plaintiff submitted RTS #144446 to Defendant Roberts asking for an appointment with Mr. Roberts. (Dkt. 43-23 at 11). The response gave Plaintiff an appointment on May 16, 2019. *Id.* On August 14, 2019, Plaintiff submitted Grievance #19-39, asking that he not be charged for chronic care medication that previously had been free. *Id.* at 10. In response to the grievance, Plaintiff was advised of the applicable policy, given a list of medications that were exempt from the copay, and informed that the

14

medications at issue were not free. *Id.* at 7-9. On October 21, 2019, Plaintiff submitted Grievance Appeal #19-39. *Id.* at 4-5. He argued that because the medications at issue are for his chronic illnesses, the prescriptions should be free under DOC policy. *Id.* On November 20, 2019, Plaintiff was informed that the issue required further investigation. *Id.* at 3. On December 19, 2019, Plaintiff's grievance was returned unanswered, because both the underlying RTS and grievance were untimely submitted. *Id.* at 2. Related correspondence, however, indicates that Plaintiff's complaints of improper medication charges were investigated and refunds were issued. *Id.* at 12-20.

On June 14, 2019, Plaintiff submitted RTS #144764 to Defendant Roberts, asking for a list of all the medications for which he was being charged and the dates. The response advised Plaintiff that there was a fee of 50¢ per page for the requested records and that a disbursement form needed to be completed. (Dkt. 43-9 at 3).

On June 25, 2019, Plaintiff submitted Grievance #19-29, complaining he had been improperly charged for chronic care medications and asking to stop the charges and to be reimbursed. (Dkt. 43-14 at 2-3). The grievance was returned unanswered because Plaintiff had failed to attach a copy of the RTS, as required by policy. *Id.* at 4. Plaintiff was given 10 days to resubmit this Grievance. *Id.*

On July 11, 2019, Plaintiff submitted RTS #144965 to Defendant Roberts, requesting a list of his medications that required payment. The response stated "no disposition." (Dkt. 43-24 at 10). On August 16, 2016, Plaintiff submitted Grievance #19-41 regarding this RTS

and asking for a list of his medications.  *Id*. at 9.  In response, Plaintiff was given a list of

medications requiring a $4.00 copay.  *Id*. at 6-8.  On October 30, 2019, Plaintiff submitted

a grievance appeal to the ARA.  *Id*. at 14.  The response advised Plaintiff that no grounds

for an appeal had been established because the issue--a request for a list of medications--

needed to be addressed through the sick call process.  *Id*. at 2.

On August 8, 2019, Plaintiff submitted RTS #145163 to Trust Fund, asking for the

amount he owed for prescription copays.  The response stated "OK," and a printout of his

Obligations Report was provided.  (Dkt. 43-9 at 4-7).

On August 16, 2019, Plaintiff submitted Grievance #19-41, asking for a list of the

medications he is being charged for, as well as the dates and amounts of the charges.  In

response, Plaintiff was sent a list of the medications with the dates.  Each medication had

a $4.00 copay.  On October 21, 2019, Plaintiff submitted a grievance appeal to the ARA,

claiming the list he received was only for 2019 medications, when he needed the charges

going back to 2014.  On November 24, 2019, the ARA advised Plaintiff that further

investigation was needed.  On December 19, 2019, DOC Medical Services responded to

Plaintiff's grievance appeal, stating there was no ground for appeal, because the appropriate

method for addressing any health concern is through the facility's sick call process on a

Request for Health Services form.  Plaintiff also was notified that he was being issued a

restriction warning for misuse of the grievance process.  (Dkt. 18-7 at 9-15).

On October 14, 2019, Plaintiff submitted RTS #145569 to Defendant Roberts, asking

to be advised of the number of pages in his medication list, so he could submit a disbursement request.  Plaintiff was advised that there were two pages.  (Dkt. 43-9).

On October 21, 2019, Plaintiff filed an appeal of Grievance #19-39, which concerned medications for chronic medical conditions.  (Dkt. 18-8 at 12-16).  On December 19, 2019, the appeal was returned unanswered because the RTS for the issue and the grievance were untimely.  *Id.*

On November 19, 2019, Plaintiff submitted RTS #145789 to Records, stating he had been charged for legal, medical, and prescription copays for four years and asking whether it was proper when he had no money at that time.  In response, Plaintiff was advised to discuss the issue with his case manager or unit staff.  (Dkt. 43-9 at 9).

On January 7, 2020, Plaintiff submitted RTS #146114 to Trust Fund, asking for the amounts he owed for legal, medical, and prescription copays.  The response stated "OK," and an Obligations Report was provided to him.  (Dkt. 43-9 at 10-14).

On August 10, 2020, Plaintiff submitted RTS #147266 to Trust Fund, stating he had signed a disbursement for $15.00 to obtain a copy of his father's death certificate, however, he had not received a receipt indicating the fee had been sent to the Oklahoma Department of Health.  Plaintiff asked for the status of his request, and the response advised him to "resend."  A copy of Plaintiff's Statement Report, which was included with the response, did not indicate the $15.00 disbursement had been received.  (Dkt. 43-9 at 15-16).

Finally, according to the affidavit by Mark Knutson, Manager of the DOC ARA,

17

Plaintiff did not submit a grievance or grievance appeal concerning trust fund issues, being denied access to the grievance process, or retaliation for utilizing the grievance process. Mr. Knutson also states that Plaintiff has not exhausted his administrative remedies for these matters. (Dkt. 43-19 at 2).

## B.  Miscellaneous Requests to Staff, Grievances, and Appeals

On April 11, 2019, Plaintiff submitted RTS #144251 to Defendant Roberts asking for an appointment.  In response, Plaintiff was advised to meet with Roberts on April 16, 2019. (Dkt. 43-10 at 2).

On May 8, 2019, Plaintiff submitted RTS #144443 to Dr. Eddy, requesting a medical parole.  The response advised that the issue could be discussed at their meeting on May 16, 2019.  (Dkt. 43-10 at 3).

On August 15, 2019, Plaintiff submitted RTS #145213 to "MED-Ms. Marsha," asking for the total number of documents in his medical file, so he could make a decision about paying for a copy of the record.  Plaintiff was advised that a nurse was checking into the issue, and that she already had met with Plaintiff and given him the information.  (Dkt. 43-10 at 4).

On September 21, 2019, Plaintiff submitted RTS #MARA-19-103 to the Medical ARA, complaining that he had missed a meal on that date and on earlier dates, preventing him from taking his medication with food.  (Dkt. 43-22 at 3-4).  The RTS was returned unanswered because the issue was not medical, and the RTS had otherwise failed to comply

with the grievance process.  *Id.* at 2.  Related correspondence indicates that the issue was nonetheless investigated by staff.  *Id.* at 8-10.

On October 2, 2019, Plaintiff submitted RTS #145451 to "MED Records/Marsha/ Tiffany," asking for a copy of the X ray of his back.  Plaintiff was advised that there was a cost of 50¢ per page for the requested records, and he needed to complete a disbursement form prior to release of the records.  (Dkt. 43-10 at 6).

On September 27, 2019, Plaintiff submitted RTS #145441 to "MED/Marsha/ Tiffany," requesting information, including medical records, about a surgery he had at "O.U. MED" in 2015.  Plaintiff was advised that there was a cost of 50¢ per page for the requested records, and he needed to complete a disbursement form prior to release of the records. (Dkt. 43-10 at 5).

On October 14, 2019, Plaintiff submitted RTS 145570 to "Marsha" and "Tiffany" asking how many CT scans he had at OU from 2015 through the date the RTS was submitted.  In response, Plaintiff was advised he had three CT scans.  (Dkt. 43-10 at 7).

On October 14, 2019, Plaintiff submitted RTS #145568 to Defendant Roberts, asking for the cost of a CD copy of the X ray of his back.  Plaintiff was advised that he was prohibited from receiving copies of CDs or other recorded material.  (Dkt. 43-10 at 8).

On October 15, 2019, Plaintiff submitted RTS #145577 to Defendant Roberts, asking if he could obtain his medical file electronically.  Plaintiff again was advised that CDs or recorded material were prohibited.  (Dkt. 43-10 at 9).

19

On October 15, 2019, Plaintiff submitted RTS #145578 to "Ms. Marsha/Tiffany MED," asking for the number of pages in a doctor's report from a particular appointment, so he could request and pay for copies. Plaintiff was advised that there were seven pages in the report. (Dkt. 43-10 at 10).

On November 19, 2019, Plaintiff submitted RTS #145791 to Defendant Roberts, asking how many documents were in his medical file. The response requested Plaintiff to be more specific regarding what he was requesting, because he had made previous requests for files and failed to pick them up. (Dkt. 43-10 at 11-12).

On April 24, 2020, Plaintiff submitted RTS #146721 to Defendant Roberts, asking how to get printed copies of his MRIs, CT scans, and X rays. Plaintiff was advised that there was a cost of 50¢ per page for the requested records and that a completed disbursement form was required. (Dkt. 43-10 at 13).

On May 5, 2020, Plaintiff submitted RTS 146775 to Dr. Eddy requesting a recommendation for medical parole. Plaintiff was advised to submit a sick call request for an appointment with his provider to discuss the issue. (Dkt. 43-10 at 14).

On September 25, 2020, Plaintiff submitted RTS #147449 to Defendant Roberts, requesting approval for a medical pump to treat his lymphedema. There was no response to this RTS. (Dkt. 43-10 at 15-16).

### C. Medical Requests

Plaintiff submitted multiple requests for health services including requests for

20

medication and items such as eyeglasses, compression stockings, and extra toilet paper. Plaintiff also requested appointments with doctors for a variety of ailments, including dental care, lymphedema, and shoulder surgery.  (Dkt. 43-7).

According to the affidavit by Cheri McCleave-Redpath, Nurse Manager in the Medical ARA, Plaintiff never submitted a grievance appeal regarding medical care or treatment for his back, neck, or shoulder pain, lymphedema, or a specific medical diet. Further, the Medical ARA has not received any properly submitted grievance appeals from Plaintiff.  Ms. McCleave concluded that Plaintiff has not exhausted his administrative remedies in accordance with the DOC grievance policy with respect to any medical issues. (Dkt. 43-18).[8]

### D.  Retaliation for Using Grievance Policy

Mark Knutson, Manager of the DOC ARA, states by affidavit that Plaintiff did not submit a grievance appeal concerning any issues of retaliation for utilizing the grievance process.  Therefore, any claims related to retaliation are unexhausted.  (Dkt. 43-19).

### E.  Interference with Exhaustion

Plaintiff alleges in his response to the motion to dismiss that he was unable to exhaust his administrative remedies, because he was threatened with punishment for pursuing his administrative remedies.  (Dkt. 54 at 5-6).  He speculates that possible punishment could have included his loss of phone calls or visits with his family, loss of canteen purchases,

---

[8] Although Plaintiff did not appeal his requests for a special medical diet to the Medical ARA, he did exhaust the claim through the regular ARA.  (Dkt. 43-19).

21

placement in segregated housing or "the run," or loss of access to power sources for electronic items. *Id.* at 6. These punishments allegedly could have prevented him from using a fan, which could have resulted in serious injury or death if he became too hot, because of his asthma. *Id.* Plaintiff, however, fails to set forth any specific evidence of such threatened punishment, instead asserting he needs discovery to support his argument. *Id*. at 5.

### F. Conclusion

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there are no genuine issues of material fact concerning whether Plaintiff's claims set forth above are unexhausted. Summary judgment is GRANTED for these claims.

### V. Injunctive Relief

Finally, Plaintiff requests a permanent injunction prohibiting Defendants from retaliating against him, an order granting "reasonable service awards," and proper training of staff in policy and human rights. (Dkt. 18 at 47). Because the Court finds there is no ongoing constitutional violation, the request injunctive relief must be denied. *See Green v. Mansour*, 474 U.S. 64 (1985).

**ACCORDINGLY,**

1. Defendants's motion for summary judgment with regard to Plaintiff's medical diet claim and his equal protection and policy violation claim (Dkt. 44) is GRANTED.

2. Defendants' motion to dismiss Defendants Sharon McCoy and Cheri Atkinson pursuant to Fed. R. Civ. P. 12(b)(6) for failure to demonstrate the personal participation of these two defendants (Dkt. 44) is GRANTED.

3. Defendants' motion for summary judgment regarding Plaintiff's failure to exhaust the administrative remedies for his remaining claims (Dkt. 44) is GRANTED.

4. Plaintiff's request for injunctive relief is DENIED.

5. The dismissal of this action shall count as a "PRIOR OCCASION" or "STRIKE," pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 16th day of February 2022.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA